UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RASHIDA AYERS,

                Plaintiff,

                -against-

THE CITY OF NEW YORK; NEW YORK CITY
POLICE DEPARTMENT; DETECTIVE ROBERT
DIAPOLA, Shield No. 6532, Tax Registry No.
Unknown; POLICE OFFICER WAYNE
STANCZUK, Shield No. Unknown, Tax Registry
No. 898579; and SERGEANT ROSALYN
GREAUX, Shield No. Unknown, Tax Registry No.
915832,

                Defendants.
---------------------------------------------------------------X

AMENDED COMPLAINT

09 CIV 4961 (TPG)

Hon. Thomas P. Griesa

Jury Trial Demanded



Plaintiff, Rashida Ayers ("Ms. Ayers"), by her attorneys, Kreisberg & Maitland, LLP, for her Complaint, alleges as follows:

## INTRODUCTION

1.     Ms. Ayers brings this action against Detective Robert Diapola ("Detective Diapola"), Shield No. 6532; Police Officer Wayne Stanczuk ("Police Officer Stanczuk"); and Sergeant Roslyn A. Greaux ("Sergeant Greaux") (all sued individually and in their official capacities); The City of New York ("The City"); and the New York City Police Department ("N.Y.P.D."), pursuant to 42 U.S.C. § 1983, to redress the deprivation of her constitutional rights and for violating her rights under New York State and common law.

2. At about midnight on June 2, 2009, Ms. Ayers and her co-worker, Mr. Ayo Adeniyi, were still at work, hours after their regular shift had ended, out on the road in a New York City owned and registered vehicle to conduct an emergency child abuse investigation. Ms. Ayers and Mr. Adeniyi were, and remain, Child Protective Specialists ("CPS") for The City's Administration for Children's Services ("ACS"). They were, and remain, assigned to Emergency Children's Services ("ECS"), an elite corps of highly trained and experienced specialists who go out at night, on weekends, and during holidays to investigate reports of child abuse and neglect deemed too serious to wait for the next business day. They were, and remain, crisis, emergency responders accustomed to going into violent, dangerous neighborhoods and removing children in imminent risk of serious injury or death. These workers were, and remain, the City's last line of defense. They work regularly and closely with law enforcement, whom they regard as vital partners in the performance of their work.

3. On this already tragic night, as Ms. Ayers and Mr. Adeniyi ventured out to save a young life, already assured of working many hours beyond their 5:00 p.m. to midnight tour, Ms. Ayers became a victim of police misconduct. On that night, plaintiff Rashida Ayers was senselessly and wrongfully targeted for and then subjected to official police misconduct by the defendant including Detective Diapola's malfeasance, the non-feasance and breaches of duty of Police Officer Stanczuk and others, and Sergeant Greaux's full participation as a co-conspirator and actor in these events.

4. On June 2, 2006, after midnight and while doing her vital job, Rashida Ayers was stopped by defendants Diapola and Stanczuk, and others; seized; and then arrested and handcuffed on the orders of defendant Greaux, all without probable cause to believe that she had committed or was committing any crime. After some 24 hours in custody, Ms. Ayers was released. A judicial marathon followed.

5. Over the next year, Ms. Ayers went to traffic court, where Detective Diapola testified falsely. This was so apparent that all four of the phony traffic summonses he had issued to plaintiff Ayers were dismissed by a New York State Administrative Law Judge as soon as he concluded his testimony. Not content with this, he pursued his false charges to trial in criminal court, where he again testified falsely. All criminal charges filed against Ms. Ayers on the complaint of Detective Diapola were dismissed on motion of the District Attorney, again right after Detective Diapola testified on direct, and again without cross-examination.

6. The failure of the N.Y.P.D., and its employees, some of whom are named herein as defendants, to abide by the law and the N.Y.P.D.'s own rules and procedures, enabled all of this to occur. And as a result, Ms. Ayers' constitutional rights, as protected by the Fourth and Fourteenth Amendments to the United States Constitution, by Article I § 6 of the New York State Constitution, and her rights under New York State and common law, were violated. She brings this action to redress this wrongdoing.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, because Ms. Ayers' claims arise under federal law.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b), because the acts complained of occurred in the State of New York, County of Bronx.

## PARTIES

9. Ms. Ayers is a citizen of the United States of America. She resides in the State of New York, County of New York.

10. At all relevant times, Detective Diapola was an employee of the N.Y.P.D. and was acting within the scope of his employment and under color of law.

11. At all relevant times, Police Officer Stanczuk was an employee of the N.Y.P.D. and was acting within the scope of his employment and under color of law.

12. At all relevant times, Sergeant Greaux was an employee of the N.Y.P.D. and, was acting within the scope of her employment and under color of law.

13. The City is a municipal corporation organized pursuant to the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York. At all times relevant herein, it was the employer of Detective Diapola, Police Officer Stanczuk, Sergeant Greaux, and Police Officer Bassen.

## FACTS UNDERLYING THE ARREST AND PROSECUTION OF MS. AYERS

14. At all relevant times, Ms. Ayers was a Child Protective Specialist for ACS, who was assigned to ACS's ECS, an elite unit that investigates child abuse and/or neglect allegations that are deemed to be so serious and emergent as to require immediate investigation and, often, the removal of children from unsafe homes in the middle of the night, on weekends, and/or on holidays. ECS is the City's last line of defense and the last lifeline for kids at imminent risk of serious injury or death.

15. On June 2, 2006, at or around 12:30 a.m., Ms. Ayers was on duty at ECS and was assigned to handle a new child abuse report in the Bronx. ACS provided Ms. Ayers and her ACS field partner, Mr. Adeniyi, with a City-owned and marked vehicle so they could go out and find the child and ensure its safety. This was routine practice for ECS and its workers and had been many years.

16. As Ms. Ayers drove northbound on Webster Avenue toward Clay Avenue in the Bronx, Detective Diapola and Police Officer Stanczuk, who were driving in an N.Y.P.D.-marked vehicle, signaled with their strobe lights for Ms. Ayers to pull over. She immediately complied.

17. After Ms. Ayers stopped her car, Detective Diapola asked in substance: "What are you two doing in an official vehicle?" Ms. Ayers explained that she and Mr. Adeniyi were ACS workers conducting a child abuse investigation. They both displayed their ACS photo identifications and invited the officers to verify all this with their supervisors.

18. Detective Diapola was hostile from the outset. He expressed doubt that ACS and its workers conducted investigations in the middle of the night. Despite being presented with Ms. Ayers and Mr. Adeniyi's ACS issued and authorized photo identifications, and being invited to call their supervisors, Detective Diapola continued to express doubt that either Ms. Ayers or Mr. Adeniyi worked for ACS. Then he asked to see her driver's license.

19. At that point, Ms. Ayers realized that she did not have her driver's license with her. She explained this to Detective Diapola and told him that the ACS Transportation Office was open 24 hours a day and maintained a copy of her driver's license on file. She asked him to call there, but he declined.

20. At that point, Ms. Ayers asked that an N.Y.P.D. supervisor be called to the scene. Detective Diapola threatened to place Ms. Ayers under arrest if she called for a supervisor.

21. Ms. Ayers nonetheless called 911 and asked that an N.Y.P.D. supervisor be called to the scene. When Sergeant Greaux and Police Officer Bassen arrived on the scene, Ms. Ayers had hopes that reason would prevail and that she and Mr. Adeniyi could resume their investigation. Her hopes were quickly dashed.

22. After first speaking with Detective Diapola, Sergeant Greaux asked to see Ms. Ayers' ACS identification. Ms. Ayers complied. She then asked Ms. Ayers for her driver's license, and when Ms. Ayers repeated her explanation of the problem, Sergeant Greaux immediately ordered her to exit the vehicle and submit to arrest.

23. Ms. Ayers complied, and was handcuffed and transported to the 42nd Precinct in a police vehicle.

24. It was immediately apparent that Ms. Ayers was being arrested for daring to call 911 for a police supervisor. Defendants Diapola, Stanczuk, Greaux, and Bassen knew full well that Ms. Ayers and Mr. Adeniyi were legitimate ACS workers. They demonstrated this by leaving Mr. Adeniyi, and The City's vehicle, at the scene and departing en masse with Ms. Ayers. No effort was made to detain Mr. Adeniyi or to safeguard the vehicle. Mr. Adeniyi then drove that very vehicle to the precinct but was refused access. Apparently, no one wanted to talk to him.

25. While Ms. Ayers was in custody, Sergeant Torres (first name unknown) informed her that he had to verify whether she was a licensed driver. He requested, and she provided, pedigree information, including her name, date of birth, social security number, and home address. He later informed her that he had verified that she was a licensed driver.

26. While Ms. Ayers was in custody, she repeatedly asked Detective Diapola to allow her access to feminine sanitary products in her purse and to use a bathroom in order to change herself, as she was menstruating. He maliciously refused her repeated requests, and as a result she not only suffered the humiliation of soiling herself while in custody, but her health was recklessly and needlessly endangered.

27. While Ms. Ayers was in custody, police officers asked for and she provided the names and contact information of two persons who did not work for ACS in order to

7

verify her identity. She gave them her husband and sister's names and contact information.

28. At approximately 4:00 a.m., police arrived at Ms. Ayers' home, awakened her husband, told him that his wife was under arrest, and verified her identity. They did the same to Ms. Ayers' sister, who also verified her identity.

29. Despite all this, Detective Diapola falsely swore to a criminal complaint charging Ms. Ayers with criminal personation, a misdemeanor, and other charges.

30. His thirst for retribution unsatisfied, Detective Diapola went still further. Adding insult to injury, he unlawfully falsified N.Y.P.D. records and caused the falsification of court records by striking Ms. Ayers' name and designating her as a "Jane Doe," both for later use to corroborate his planned false testimony about her identity, and to ensure Ms. Ayers a longer delay in reaching arraignment. This was done with the knowledge and at least the tacit consent of Sergeant Greaux, Police Officer Bassen, and other N.Y.P.D. personnel.

31. After approximately 24 hours in custody, Ms. Ayers was arraigned in the Bronx County Criminal Court, under Docket No. 2006BX029474, on charges including false personation (P.L. §190.23) and violations of the vehicle and traffic law (V.T.L. §509 (1)).

32. Later in June, 2006, Ms. Ayers received in the mail four traffic tickets alleging that she had committed various traffic offenses. A hearing was conducted at the State Department of Motor Vehicles Traffic Violations Bureau in the Bronx, New York,

on October 30, 2006, at which Detective Diapola testified against Ms. Ayers. All of the traffic infractions against her were dismissed by the State Administrative Law Judge upon the conclusion of Detective Diapola's direct testimony.

33. At the hearing, Detective Diapola testified falsely.

34. For more than one year, Ms. Ayers was required to appear in the Bronx County Criminal and Supreme Courts to defend against charges for crimes that she did not commit. A bench trial commenced on June 15, 2007. All charges were dismissed during trial, on June 22, 2007.

35. At the criminal trial, Detective Diapola testified falsely. The District Attorney dismissed all charges after Detective Diapola's direct testimony, again without cross-examination.

## FIRST CLAIM FOR RELIEF
### (Against All Defendants, Pursuant To 42 U.S.C. § 1983—Deprivation Of Rights)

36. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "35," as if fully set forth herein.

37. All of the aforementioned acts of defendants, their agents, servants, and employees were carried out under the color of law.

38. All of the aforementioned acts deprived Ms. Ayers of the rights, privileges, and immunities guaranteed to citizens by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

39. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

40. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

41. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, and/or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

42. As a result of defendants' conduct, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

## SECOND CLAIM FOR RELIEF
### (Against All Defendants, Pursuant To 42 U.S.C. § 1983--False Arrest)

43. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "42," as if fully set forth herein.

44. On June 2, 2006, defendants detained Ms. Ayers by placing her in handcuffs.

45. Defendants intended to confine Ms. Ayers. of the rights, privileges, and immunities guaranteed to Citizens

46. Defendants did not have probable cause to believe that Ms. Ayers had committed any crime. Ms. Ayers did not engage in any conduct that warranted her arrest and detention.

47. As a result of defendants' conduct, Ms. Ayers was detained, and at all times knew she was detained. Moreover, she did not consent to her confinement.

48. In committing the aforesaid acts, defendants were acting as employees of the N.Y.P.D. within the scope of their employment and under color of law. The City and N.Y.P.D. are responsible for their actions and the consequences under the doctrine of *respondeat superior*.

49. Because defendants did not have probable cause to believe that Ms. Ayers committed any crime, the arrest/detention of Ms. Ayers and her subsequent detention were unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

50. Defendants' confinement of Ms. Ayers was not in any way privileged.

51. As a result of her false arrest by defendants, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

## THIRD CLAIM FOR RELIEF
### (Against All Defendants, Pursuant To 42 U.S.C. § 1983--False Imprisonment)

52. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "51" hereof, as though set forth fully at length herein.

53. On June 2, 2006, defendants deliberately arrested Ms. Ayers without probable cause.

54. Defendants' conduct constituted false imprisonment of Ms. Ayers.

55. As Ms. Ayers' behavior provided no justification for defendants' conduct, defendants' actions were unreasonable within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution, and thereby violated her rights under 42 U.S.C. §1983.

56. As a result of her false imprisonment by defendants, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

## FOURTH CLAIM FOR RELIEF
### (Against All Defendants, Pursuant To 42 U.S.C. § 1983—Failure To Intervene)

57. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "56" as if fully set forth herein.

58. Defendants had an affirmative duty to intervene on behalf of Ms. Ayers, whose constitutional rights were being violated in their presence by other officers.

59. Defendants failed to intervene to prevent the unlawful conduct described herein.

60. As a result of the foregoing, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

### FIFTH CLAIM FOR RELIEF
### (Against All Defendants, Pursuant
### To 42 U.S.C. § 1983-- Malicious Prosecution)

61. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "60" as if fully set forth herein.

62. As a result of defendants' false arrest of Ms. Ayers, the Bronx County District Attorney's office prosecuted Ms. Ayers for the conduct for which she was arrested. Upon information and belief, Detective Diapola provided the information necessary to permit the District Attorney's Office to file the accusatory instrument that constituted the basis for Ms. Ayers' prosecution.

63. Following the commencement of the criminal prosecution, Ms. Ayers remained detained as result of her arrest. She was required to appear in court to answer the baseless charges against her.

64. Ultimately, the criminal prosecution commenced against Ms. Ayers by the Bronx County District Attorney's Office terminated in her favor. On June 22, 2007, after a trial had already commenced, the charges that Ms. Ayers faced were dismissed.

65. At all times relevant herein, defendants acted with malice. They knew or should have known that Ms. Ayers was actually innocent of the offenses with which she was charged.

66. In committing the aforesaid acts, defendants were acting as employees of the N.Y.P.D. within the scope of their employment and under color of law. The City and N.Y.P.D. are responsible for their actions and the consequences under the doctrine of *respondeat superior*.

67. As such, the conduct of the defendants violated Ms. Ayers' rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

68. As a result of her arrest and subsequent prosecution, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

### SIXTH CLAIM FOR RELIEF
(Against Detective Diapola, Police Officer Stanczuk, And Sergeant Greaux, Pursuant To 42 U.S.C. § 1983-- Conspiracy)

69. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "68" as if fully set forth herein.

70. Detective Diapola, Police Officer Stanczuk, and Sergeant Greaux knowingly and deliberately conspired to arrest and prosecute Ms. Ayers for crimes that, defendants knew, she did not commit.

71. As such, defendants acted in a willful manner, culminating in an agreement, understanding, and/or meeting of the minds that violated Ms. Ayers' rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

72. As a result of her arrest and subsequent prosecution, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

## SEVENTH CLAIM FOR RELIEF
**(Against Detective Diapola, Police Officer Stanczuk, Sergeant And Greaux, Pursuant To 42 U.S.C. § 1983--Failure To Report Corrupt Police Activity)**

73. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "72" as if fully set forth herein.

74. Defendants, as employees of the City of New York, had an affirmative obligation pursuant to City of New York, Office of the Mayor, Executive Order No. 16, July 26, 1978, as amended, to report, directly and without undue delay, to the Commissioner of Investigation and/or an Inspector General of the City of New York, any and all information concerning conduct that they knew or should reasonably have known to involve corrupt or other criminal activity or conflict of interest by other City employees that concerned their respective employment.

75. Defendants, as employees of the N.Y.P.D., had an affirmative obligation to report the misconduct of their fellow officers to the N.Y.P.D. Internal Affairs Bureau.

76. Defendants failed to report the above-mentioned corrupt and wrongful conduct described herein.

77. As a result of defendants' failure to report as aforementioned, Ms. Ayers was subject to false arrest, false imprisonment, and malicious prosecution, and lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

## EIGHTH CLAIM FOR RELIEF
(Against Detective Diapola, Pursuant To 42 U.S.C. §1983 – Perjury)

78. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "77" as if fully set forth herein.

79. In furnishing a sworn statement in support of the criminal charges against Ms. Ayers, in testifying against Ms. Ayers at the Department of Motor Vehicles Traffic Violations Bureau hearing, and in testifying against Ms. Ayers at her criminal trial, Detective Diapola knowingly and deliberately gave false and perjurious testimony by testifying that Ms. Ayers repeatedly and continuously refused to provide her address and date of birth, prompting her arrest.

80. In testifying against Ms. Ayers at the Department of Motor Vehicles Traffic Violations Bureau hearing, Detective Diapola further knowingly and deliberately gave false and perjurious testimony by testifying that Ms. Ayers refused to give him her name and used racial epithets against him and the other arresting officers, prompting her arrest.

81. In furnishing a sworn statement in support of the criminal charges against Ms. Ayers, Detective Diapola further knowingly and deliberately gave false and perjurious testimony by stating that Ms. Ayers had furnished him with a false address and date of birth.

82. As a result of Detective Diapola's perjurious testimony against Ms. Ayers, Ms. Ayers' rights protected by the Fourth and Fourteenth Amendments to the United States Constitution were violated.

83. As a result of the foregoing, Ms. Ayers lost wages and suffered, and continues to suffer, severe humiliation, embarrassment, and emotional and psychological pain, suffering, harm, and distress.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for the following relief:

(a) On the First, Second, Third, Fourth, and Fifth Claims for Relief, judgment in her favor and against each of the defendants, jointly and severally as follows:

   (i) compensatory damages in an amount to be determined at trial;

   (ii) punitive damages in an amount to be determined at trial;

   (iii) reasonable attorneys' fees;

   (iv) costs and expenses; and

   (v) such other and further relief as is just and proper.

(b) On the Sixth and Seventh Claims for Relief, judgment in her favor and against defendants Detective Robert Diapola, Police Officer Wayne Stanczuk, and Sergeant Roslyn A. Greaux, as follows:

   (i) compensatory damages in an amount to be determined at trial;

   (ii) punitive damages in an amount to be determined at trial;

   (iii) reasonable attorneys' fees;

(iv) costs and expenses; and

(v) such other and further relief as is just and proper.

(c) On the Eighth Claim for Relief, judgment in her favor and against defendant Detective Robert Diapola, as follows:

(i) compensatory damages in an amount to be determined at trial;

(ii) punitive damages in an amount to be determined at trial;

(iii) reasonable attorneys' fees;

(iv) costs and expenses; and

(w) such other and further relief as is just and proper.

Dated: New York, New York
    July 2, 2009

>KREISBERG & MAITLAND, LLP
>Attorneys for Plaintiff
>116 John Street, Suite 1120
>New York, New York 10038
>(212) 629-4970
>
>By: *[signature]*
>Gary Maitland (GM-8763)